**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jarrod Jeffrey HARRIS, Defendant–
Appellant.**

**No. 97–6126.**

United States Court of Appeals,
Fourth Circuit.

Argued: June 7, 1999.

Decided: July 12, 1999.

**ARGUED:** James Bryan Wood, Student, University of Virginia School of Law Appellate Litigation Clinic, Charlottesville, Virginia, for Appellant. Jennifer Lynnette Haynes, Student, Roanoke, Virginia, for Appellee. **ON BRIEF:** Neal L. Walters, University of Virginia School of Law Appellate Litigation Clinic, Charlottesville, Virginia, for Appellant. Robert P. Crouch, Jr., United States Attorney, Ruth E. Plagenhoef, Assistant United States Attorney, Roanoke, Virginia, for Appellee.

Before WILKINSON, Chief Judge, and HAMILTON and WILLIAMS, Circuit Judges.

Affirmed by published opinion. Judge WILLIAMS wrote the opinion, in which Chief Judge WILKINSON and Judge HAMILTON joined.

## OPINION

WILLIAMS, Circuit Judge:

Jarrod Jeffrey Harris filed a motion under 28 U.S.C.A. § 2255(West Supp.1999), asserting that his firearms conviction under 18 U.S.C.A. § 924(c)(1) (West Supp. 1999), should be overturned in light of the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). Although *Bailey* may be applied retroactively to cases on collateral review, *see Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), Harris cannot establish either cause for his failure to raise his claim on direct appeal, or, in light of the Supreme Court's recent decision in *Muscarello v. United States*, 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111(1998), that he is actually innocent of carrying a firearm in violation of § 924(c)(1). Accordingly,

the district court correctly dismissed his § 2255 motion as procedurally barred.

## I.

As recited by this Court on direct appeal, the undisputed facts are as follows:

On the night of December 30, 1992, the Lynchburg Police Department received an anonymous telephone report of drug activity in room 238 of the Radisson Hotel. Six vice investigators, as well as two uniformed officers, went to the hotel. The front desk told them that the room had been rented for two nights and paid for in cash. The officers then went to the room. While the other officers waited in a nearby stairwell, Investigators Dantz and Lawton knocked on the door. Defendant Jarrod Harris answered the door. Lawton identified himself as a police officer and asked if he and Dantz could come in and ask some questions. Harris agreed.

Inside the room, Investigators Dantz and Lawton encountered two other men: Louis Davis and Jerry Davis. The officers told Harris that they were investigating a report of drug trafficking in the room—that they had a report of extensive foot traffic to and from the room. The men replied that they had been "partying." When the officers noticed a police scanner on a table in the room and a shoulder holster on a chair, they inquired whether there were guns in the room. Harris answered that he had one in the drawer of the bedside table, and headed towards it. Officer Lawton told him to "wait a minute" and the officer retrieved the gun, a Smith and Wesson ten millimeter pistol. Once that loaded weapon was found, the officers patted down the other men but found no other weapons.

The officers next asked Harris whose room it was, and he replied that it belonged to his uncle or his dad—that he did not know whose room it was.[1] In

1. The room was rented to a "Kerry Paige."

The police never located an individual by that

response to questioning, all three men denied ownership of everything in the room. The officers then asked Harris if they could search the room and Harris consented. Several additional officers then entered the room to assist.

During the search,[2] the officers found on the bed a Ruger .45 semiautomatic pistol lying on a Chicago Bulls jacket; Louis Davis admitted both were his. The Bulls jacket contained eight rocks of crack cocaine, weighing 1.65 grams. Louis Davis also had $215 in small bills in his wallet. A second coat, a jean jacket that was hanging over the arm of a chair, contained two rocks of crack cocaine, weighing a total of 2.69 grams. No one claimed that jacket. The officers also found a single-edged razor with a whitish residue on it and a pager on the table with the police scanner.

Inside a gray coat hanging in the closet the officers found legal papers with Harris' name on them and a baggie containing 2.49 grams of crack cocaine in the form of flakes, called "shake."[3] Also in the closet was an electronic scale to measure in grams, some ammunition for the same caliber weapon as Harris' gun, a holster, two packages of single edged razors, and $1,455 in cash in a pair of pants. Harris told the officers that he had won about $950 of the cash gambling, and that the remainder belonged to his uncle.

*United States v. Harris*, 31 F.3d 153, 154–55 (4th Cir.1994).

Harris was eventually indicted by a federal grand jury on drug and gun charges. Prior to trial, Harris moved to suppress the evidence found in the hotel room. The district court denied Harris's motion to suppress, finding that the officers had

probable cause to enter the hotel room and could therefore seize the evidence in question. After the presentation of evidence, closing arguments, and deliberation, the jury found Harris guilty of possession with intent to distribute cocaine base (crack), *see* 21 U.S.C.A. § 841(a)(1) (West 1981), and of using or carrying a firearm during and in relation to a drug trafficking crime, *see* 18 U.S.C.A. § 924(c) (West Supp. 1999). After the jury verdicts, Harris moved for judgment of acquittal. The district court granted in part Harris's motion, concluding that the evidence was insufficient to support a finding of intent to distribute. The district court reduced the drug conviction to one for simple possession and consequently dismissed the § 924(c)(1) conviction.

On direct appeal, this Court affirmed the district court's denial of Harris's motion to suppress the evidence found in the hotel room. *See Harris*, 31 F.3d at 155–56. This Court, however, reversed the district court's reduction of the distribution conviction to mere possession. *See id.* at 157. As a consequence, this Court also reinstated the jury verdict for using or carrying a firearm during and in relation to a drug trafficking crime. *See id.*

On February 7, 1996, Harris filed a motion for relief under 18 U.S.C.A. § 2255 claiming that the evidence failed to support a conviction under 18 U.S.C.A. § 924(c)(1) because he did not "use" or "carry" a weapon in the commission of a drug trafficking crime as defined by the Supreme Court in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). The Government filed a motion to dismiss, which the district court granted on December 6, 1996. Harris filed this timely appeal.

name.

**2.** At some point during the search, two men approached the room but turned and left upon seeing the police. The two men threw rocks at the window of the room before leaving in a cab.

**3.** According to testimony at trial, "shake" is created when crack rocks are broken into smaller crack rocks or when crack rocks are crumbled. Investigator Dantz testified that shake can be sprinkled on marijuana cigarettes, smoked in a pipe, or cooked back into rock form.

## II.

Harris appeals the district court's order dismissing his motion filed under 28 U.S.C.A. § 2255 (West Supp. 1999), as procedurally barred. In his § 2255 motion, Harris asserts that his firearms conviction under 18 U.S.C.A. § 924(c)(1) (West Supp. 1999), should be overturned in light of the Supreme Court's decision in *Bailey v. United States*, 516 U.S. 137, 116 S.Ct. 501 (1995). The district court denied the motion, finding that Harris failed to establish prejudice from the default.

■ Although this Court has not yet determined whether *Bailey* may be applied to cases on collateral review, the Supreme Court recently addressed the permissibility of a post-*Bailey* collateral attack on a § 924(c) conviction obtained pursuant to a guilty plea. *See Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). In *Bousley*, the Supreme Court held that "it would be inconsistent with the doctrinal underpinnings of habeas review to preclude [a] petitioner from relying on [its] decision in *Bailey* in support of [a] claim that his guilty plea was constitutionally invalid." *Id.* at ——, 118 S.Ct. at 1610. In light of the Supreme Court's decision in *Bousley*, it is now clear that *Bailey* may be applied retroactively to cases on collateral review.

■ Although Harris's *Bailey* claim is not barred from collateral review, there are significant procedural hurdles to its consideration on the merits.[4] For example, an error can be attacked on collateral

review only if first challenged on direct review. As the Supreme Court has frequently noted, habeas review is an extraordinary remedy and " 'will not be allowed to do service for an appeal.' " *Reed v. Farley*, 512 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994) (quoting *Sunal v. Large*, 332 U.S. 174, 178, 67 S.Ct. 1588, 91 L.Ed. 1982 (1947)). Here, it is undisputed that Harris did not raise his claim on direct appeal. Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in a federal habeas proceeding only if the defendant can show both cause for and actual prejudice from the default, *see Murray v. Carrier*, 477 U.S. 478, 485, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986), or that he is actually innocent, *see Smith v. Murray*, 477 U.S. 527, 537, 106 S.Ct. 2661, 91 L.Ed.2d 434 (1986).

Harris argues that he can show cause because the legal basis for his claim, *i.e.*, the Supreme Court's decision in *Bailey*, was not reasonably available to him at the time his direct appeal was heard. We note that the petitioner in *Bousley*, who also failed to raise his claim on direct review, made the same argument. The Supreme Court, however, found the argument to be without merit. *See Bousley*, 523 U.S. at ——, 118 S.Ct. at 1611. Although the Supreme Court has held that a claim that "is so novel that its legal basis is not reasonably available to counsel" may constitute cause for a procedural default, *Reed v. Ross*, 468 U.S. 1, 16, 104 S.Ct. 2901, 82

---

4. Dicta in the district court's opinion, which was decided prior to this Court's opinions in *United States v. Chen*, 131 F.3d 375 (4th Cir. 1997) (en banc), *cert. denied*, —— U.S. ——, 118 S.Ct. 1175, 140 L.Ed.2d 183 (1998), and *United States v. Hastings*, 134 F.3d 235 (4th Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 1852, 140 L.Ed.2d 1100 (1998), states "that Harris would prevail if he were presenting the instant argument on direct appeal." (J.A. at 425.) In light of this Court's intervening decisions in *Chen* and *Hastings*, both parties spend much of their briefs debating, in essence, whether the district court's observation concerning Harris's odds of prevailing on di-

rect appeal was correct. To that end, the parties, particularly the Government, analyze Harris's claim under the plain error test set forth in *United States v. Olano*, 507 U.S. 725, 731–32, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (establishing standard for reviewing claims on direct appeal that were not raised below). Of course, because Harris's claim is not on direct appeal, as the district court correctly observed in dismissing Harris's motion, the accuracy of the district court's observation is of no real import, and Harris's claim must be addressed pursuant to the well established rules governing collateral attacks.

**318**

L.Ed.2d 1 (1984), the Court specifically held that a *Bailey* claim does not qualify as such, *see Bousley,* 523 U.S. at ——, 118 S.Ct. at 1611. According to the Supreme Court, "[t]he argument that it was error for the District Court to misinform petitioner as to the statutory elements of § 924(c)(1) was most surely not a novel one." *Bousley,* 523 U.S. at ——, 118 S.Ct. at 1611 (citing *Henderson v. Morgan,* 426 U.S. 637, 645–46, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976)). As a consequence, Harris's argument—that it was error for the district court to misinstruct the jury as to the statutory elements of § 924(c)(1)—is *a fortiori* not a novel one. Thus, Harris is unable to establish cause for his default.[5]

■ Harris's *Bailey* claim may still be reviewed in this collateral proceeding if he can establish that the error "has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496, 106 S.Ct. 2639. To establish actual innocence, Harris must demonstrate that, " 'in light of all the evidence,' " "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo,* 513 U.S. 298, 327–28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (quoting Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments,* 38 U. Chi. L. Rev. 142, 160 (1970)). In light of the Supreme Court's recent decision in *Muscarello v. United States,* 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998), Harris cannot establish actual innocence.

■ In *Muscarello,* the Supreme Court held that the phrase "carries a firearm" is not limited to the carrying of firearms on a person, but also applies to a person who carries a weapon to a drug-sale location. *See id.* at ——, 118 S.Ct. at 1916–17. Here, it is undisputed that a handgun was found in the nightstand of Harris's hotel room and that Harris was selling drugs out of that room.[6] Moreover, Harris admitted that he owned the gun found in the nightstand, ammunition for the same caliber weapon was found in his coat pocket, and gun registration records indicated that the gun belonged to him. Harris points to no evidence that gives rise to the inference that the gun belonged to anyone other than Harris or that anyone other than Harris would have carried the gun to the hotel room. Indeed, the evidence leads to the unavoidable conclusion that Harris "carried" a firearm in violation of § 924(c)(1). Thus, Harris cannot establish actual innocence and the district court did not err in dismissing Harris's *Bailey* claim as procedurally barred.

### III.

For the foregoing reasons, the decision of the district court is affirmed.

*AFFIRMED.*

**5.** The district court, which denied Harris's motion for habeas relief prior to the Supreme Court's opinion in *Bousley,* found that Harris established cause for the default, but failed to establish prejudice. Even if Harris could establish cause, we agree with the district court that Harris cannot establish prejudice because the "facts conclusively establish Harris' guilt under the 'carry'-prong of § 924(c)(1)." (J.A. at 428.)

**6.** During oral argument counsel for Harris argued that even if there was sufficient evidence that Harris "carried" the firearm into the hotel room, there was insufficient evidence that he "carried" the firearm "during and in relation to a drug trafficking offense." We disagree. The hotel room had been rent-

ed under a fictitious name for two nights and paid for in cash. During the two nights in question there was extensive foot traffic to and from the room, and the police received reports of drug activity. During the search of the hotel room, the officers found nearly 7 grams of crack cocaine, $1,670 in cash, a pager, a police scanner, single-edged razors, and an electronic scale. Indeed, it is undisputed that the jury found Harris guilty of possession with intent to distribute crack cocaine in violation of 21 U.S.C.A. § 841(a)(1) (West 1981). Thus, despite Harris's contentions to the contrary, there was overwhelming evidence that he "carried" the firearm "during and in relation to a drug trafficking offense."