**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 06-4282**

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

DAVID B. PASQUANTINO,

Defendant - Appellee.

**No. 06-4307**

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

versus

CARL J. PASQUANTINO,

Defendant - Appellee.

Appeals from the United States District Court for the District of
Maryland, at Baltimore. J. Frederick Motz, District Judge. (1:00-
cr-00202-JFM; 1:06-cv-00066-JFM; 1:06-cv-00065-JFM)

Argued: December 1, 2006          Decided: April 18, 2007

Before MICHAEL and GREGORY, Circuit Judges, and Gerald Bruce LEE, United States District Judge for the Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished opinion. Judge Gregory wrote the opinion, in which Judge Michael and Judge Lee joined.

_____

**ARGUED:** Gregory Welsh, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Baltimore, Maryland, for Appellant. Bruce Robert Bryan, Syracuse, New York; Jensen Egerton Barber, Washington, D.C., for Appellees. **ON BRIEF:** Rod J. Rosenstein, United States Attorney, Baltimore, Maryland, for Appellant.

_____

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

Unique among the cases impacted by United States v. Booker, 543 U.S. 220 (2005), the case of David and Carl Pasquantino ("Defendants") raises a procedural question that "tests the reality of [the] great principles" underlying the habeas corpus doctrine, among them, fundamental fairness.[1] Harris v. Nelson (Nelson), 394 U.S. 286, 291 (1969). Defendants' case asks whether, where there are undisputed Booker errors infecting a sentencing proceeding and where Booker expressly applies to that proceeding, but where the Supreme Court has declined to address the Booker issues because they fall outside the scope of its certiorari grant, the district court must also deny Defendants the benefit of a Booker analysis. We think not. We therefore affirm the judgment of the court below, which granted Defendants a writ of habeas corpus in order to resentence them in light of Booker, a decision issued while Defendants' case was pending on direct review. We further uphold as reasonable the new sentences that the district court imposed.

I.

In February 2001, a jury in the District of Maryland convicted Defendants of wire fraud arising out of a scheme to smuggle liquor from the United States to Canada to evade Canadian

---

[1] "[F]undamental fairness is the central concern of the writ of habeas corpus . . . ." Strickland v. Washington, 466 U.S. 668, 697 (1984).

import taxes.  At the sentencing hearing on June 8, 2001, the district judge noted that "he was fully satisfied from the evidence produced at trial that the [amount of] loss [involved in the case] is above two and a half million dollars."  J.A. 61. Defense counsel argued to no avail that this fact, which would enhance Defendants' sentences beyond the statutory maximum, had not been determined by a jury consistent with Apprendi v. New Jersey, 530 U.S. 466 (2000).  The Government responded to this argument by citing two Seventh Circuit cases holding that Apprendi did not apply to the United States Sentencing Guidelines ("Guidelines").

Defense counsel also made arguments about Defendants' advanced age and poor health at sentencing.  The district judge stated that he could not consider these matters under the Guidelines.  The court then adopted the following Guidelines calculations: Defendants' base offense level of six was increased by thirteen levels due to the amount of loss involved, by two levels for more than minimal planning, and by four levels for role in the offense, resulting in an adjusted offense level of twenty-five and a Guidelines range of fifty-seven to seventy-one months in prison.  The court sentenced Defendants to fifty-seven months in prison, three years of supervised release, and a special assessment of $100 per count.

A divided panel of this Court reversed the convictions, but after rehearing, the en banc Court affirmed the convictions, finding that the common law revenue rule did not prevent the prosecution of a scheme to deprive a foreign government of tax revenues. United States v. Pasquantino, 336 F.3d 321 (4th Cir. 2003) (en banc), rev'g 305 F.3d 491 (4th Cir. 2002). The mandate issued on August 11, 2003.

Without taking action to stay the mandate, Defendants sought and were granted certiorari in the United States Supreme Court on the question of the whether a plot to defraud a foreign government of tax revenue violates the federal wire fraud statute. In their merits brief to the Supreme Court, Defendants argued in a footnote that their sentences should be vacated in light of Blakely v. Washington, 542 U.S. 296 (2004), which had been decided five days before the merits brief was due.

In an opinion dated April 26, 2005, the Supreme Court affirmed the judgment of this Court. United States v. Pasquantino, 544 U.S. 349 (2005). The majority opinion declared in a footnote that the Court would not address Defendants' Blakely argument because Defendants had not raised the claim before the Fourth Circuit or in their petition for certiorari. Id. at 372 n.14. Justice Ginsburg, writing for the dissenting justices, disagreed. She noted that Defendants' failure to raise their Blakely claim below or in their petition for certiorari was no

-5-

fault of Defendants given that Blakely was decided well after they were granted certiorari. Id. at 377 n.5. She further noted that Defendants were sentenced in violation of an even newer case, United States v. Booker.[2] See Pasquantino, 544 U.S. at 377 n.5. Booker had been decided after oral arguments in Defendants' case, but three months before the Supreme Court issued its written decision. Without explanation, the Supreme Court later denied a petition for rehearing submitted by Defendants that explicitly raised the Booker issue. Pasquantino v. United States, 545 U.S. 1135 (2005). The Supreme Court issued judgment on June 28, 2005.

Having lost at the Supreme Court, Defendants filed in this Court a motion to withhold issuance of the mandate, vacate their sentences, and remand to the district court for resentencing consistent with Booker and United States v. Hughes, 401 F.3d 540 (4th Cir. 2005). By a single-page order dated August 24, 2005, a majority of a panel of this Court treated the motion as one to recall the mandate issued on August 11, 2003, and concluded that no extraordinary circumstances warranted doing so.

Defendants then filed in the district court a memorandum seeking resentencing. The Government opposed the request on the grounds that the district court did not have jurisdiction to

---

[2]Booker invalidated the statutory provisions that made the Guidelines mandatory and ruled that a district court's imposition of a sentence that exceeded the maximum authorized by jury findings alone violated the Sixth Amendment. 543 U.S. at 226-27.

resentence Defendants. Shortly thereafter, Defendants filed in the district court motions pursuant to 28 U.S.C. § 2255 (2000) seeking resentencing. The Government opposed these motions as well. During a hearing on January 12, 2006, the district court acknowledged that it did not have jurisdiction in the criminal case to resentence Defendants. The court did, however, decide to grant Defendants' § 2255 motions and to order resentencing.

At resentencing on February 8, 2006, the district court determined that the Guidelines range it had applied during the original sentencing (fifty-seven to seventy-one months) remained applicable and that there were no grounds for departure under the Guidelines. Next, the court weighed the factors for sentencing under 18 U.S.C.A. § 3553(a) (West Supp. 2004). Defendants had argued in their sentencing memoranda and at the hearing that application of these factors warranted sentences lower than the applicable Guidelines range. Finally, in the light of the § 3553(a) factors, the court sentenced David Pasquantino to eighteen months in prison and Carl Pasquantino to twelve months and one day in prison. The court entered orders granting Defendants' § 2255 motions that same day. The Government now appeals. We review the district court's legal conclusions de novo and its findings of fact for clear error. United States v. Roane, 378 F.3d 382, 395 (4th Cir. 2004).

II.

The writ of habeas corpus, "the highest remedy in law" for an individual who is imprisoned, has its formal roots in seventeenth-century England. Smith v. Bennett, 365 U.S. 708, 712 (1961). In this country, the Framers incorporated the Great Writ[3] into the Constitution, see U.S. Const. art I, § 9, and since then, the Supreme Court has considered it "the best and only sufficient defence of personal freedom," Ex parte Yerger, 75 U.S. 85, 95 (1869), and "the symbol and guardian of individual liberty," Peyton v. Rowe, 391 U.S. 54, 59 (1968).

Congress has expanded the scope of the writ several times since first authorizing its use by federal courts in 1789. United States v. Hayman, 342 U.S. 205, 211 n.7 (1952). Section 2255, enacted in 1948, is now the primary means by which federal prisoners avail themselves of the Great Writ's protections. See Davis v. United States, 417 U.S. 333, 343 (1974). The most fundamental change Congress forced by adopting § 2255 was forum-related: federal prisoners now collaterally attack their sentences in the district of sentencing rather than the district of confinement. See § 2255. Nonetheless, as the Supreme Court explained in Hayman: "Nowhere in the history of Section 2255 do we

---

[3]As explained in Stone v. Powell, 428 U.S. 465, 475 n.6 (1976), "[i]t is now well established that the phrase 'habeas corpus' used alone refers to the common-law writ of habeas corpus ad subjiciendum, known as the 'Great Writ.'"

-8-

find any purpose to impinge upon prisoners' rights of collateral attack upon their convictions. On the contrary, the sole purpose [in enacting § 2255] was to minimize the difficulties encountered in habeas corpus hearings by affording the same rights in another and more convenient forum." 342 U.S. at 219.

Section 2255 "can perform the full service of habeas corpus" for a federal prisoner. Andrews v. United States, 373 U.S. 334, 339 (1963). A prisoner may petition for discharge or even for "a more flexible remedy," such as a new trial or the remedy Defendants here seek: the right to vacate, set aside, or correct their sentences. Id. Because § 2255 and the writ of habeas corpus are substantively identical in scope, Hill v. United States, 368 U.S. 424, 428 n.5 (1962), this Court may look to habeas precedent in considering the § 2255 petition presented here, cf. Kaufman v. United States, 394 U.S. 217, 222 (1969), abrogated on other grounds by Stone v. Powell, 428 U.S. 465 (1976).

## III.

We first consider whether the district court's grant of the writ was proper. The Government contends that it was not because Defendants procedurally defaulted their Booker claim and cannot meet the "cause and prejudice" standard applied to cases involving

-9-

procedural default.  For the reasons explained below, we reject these contentions.

## A.

The Government argues that in the opinion affirming Defendants' convictions, the Supreme Court ruled that Defendants procedurally defaulted their Booker claim.[4]  Accordingly, the Government argues, the appropriate standard of review for Defendants' § 2255 motions is cause and actual prejudice.  Under this standard, "[a] claim raised for the first time in a § 2255 motion generally is not cognizable in federal court unless the petitioner demonstrates 'both (1) cause excusing his . . . procedural default, and (2) actual prejudice resulting from the errors of which he complains.'"  United States v. Landrum, 93 F.3d 122, 124-25 (4th Cir. 1996) (quoting United States v. Frady, 456 U.S. 152, 167-68 (1982)).  The Government contends that Defendants cannot show cause and, consequently, should have been denied habeas relief, because Defendants could have presaged in 2001 that

---

[4]The Government, like the courts in general, understands Booker as an extension of Blakely.  See Booker, 543 U.S. at 245 (noting that the Court reached its decision by "[a]pplying its decisions in Apprendi v. New Jersey and Blakely v. Washington to the Federal Sentencing Guidelines" (citations omitted)). Thus, although the Supreme Court opinion observed only that Defendants had not raised a Blakely claim below, the Government urges, and not frivolously so, that the real meaning of the Court's observation is that Defendants did not raise below the claim that they were sentenced in violation of the Sixth Amendment, regardless of whether that claim relied on Blakely or Booker.

the Supreme Court would decide <u>Booker</u> (which was contrary to our precedent at the time[5]) and that <u>Booker</u> would apply to their sentences.[6]  <u>Cf.</u> <u>United States v. Mikalajunas</u>, 186 F.3d 490, 493 (4th Cir. 1999) (holding that showing cause for procedural default based on a subsequent change in the law requires showing that "the legal basis for the claim was not reasonably available when the matter should have been raised").

We would accept the Government's contentions but for the fact that no court has held that Defendants procedurally defaulted their Sixth Amendment claim.  As explained below, absent a procedural default, cause and prejudice is not the appropriate standard to apply to Defendants' petitions.

1.

Neither the Supreme Court nor the district court ruled that it could not consider Defendants' <u>Blakely</u> claim because Defendants had procedurally defaulted that claim.  Rather, the Supreme Court observed that pursuant to its preferred practice of limiting review to the questions presented in the petition for certiorari, it would not address Defendants' <u>Blakely</u> argument.  The Court's

---

[5]<u>See</u> <u>United States v. Kinter</u>, 235 F.3d 192, 200 (4th Cir. 2000) (holding that "the Sentencing Guidelines pass muster under . . . <u>Apprendi</u>"), <u>abrogated by</u> <u>Booker</u>, 543 U.S. 220, <u>as stated in</u>, <u>Hughes</u>, 401 F.3d at 547-48.

[6]Convinced that Defendants have not shown cause, the Government does not address the issue of prejudice.

-11-

discussion of Defendants' Sixth Amendment claim states in its entirety:

> Petitioners argue in a footnote that their sentences should be vacated in light of <u>Blakely v. Washington</u>, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). Brief for Petitioners 26, n. 29. Petitioners did not raise this claim before the Court of Appeals or in their petition for certiorari. We therefore decline to address it. <u>See, e.g.</u>, <u>Lopez v. Davis</u>, 531 U.S. 230, 244, n. 6, 121 S. Ct. 714, 148 L. Ed. 2d 635 (2001) (declining to address "matter . . . not raised or decided below, or presented in the petition for certiorari"); <u>Whitfield v. United States</u>, 543 U.S. 209, 125 S. Ct. 687, 160 L. Ed. 2d 611 (2005) (affirming federal convictions despite the imposition of sentence enhancements, see Brief for Petitioners therein, O.T. 2004, No. 03-1293, etc., p. 7, n. 6).

<u>Pasquantino</u>, 544 U.S. at 372 n. 14.

The Court does not state that Defendants have "procedurally defaulted" their <u>Blakely</u> or <u>Booker</u> claim, nor does the Court indicate that it <u>cannot</u> (as opposed to <u>will not</u>) consider their claim. The Court cites none of the voluminous Supreme Court precedent on procedural default. <u>See, e.g.</u>, <u>Edwards v. Carpenter</u>, 529 U.S. 446 (2000); <u>Bousley v. United States</u>, 523 U.S. 614 (1998). Rather, it cites a decision, <u>Lopez</u>, which itself cites <u>Blessing v. Freestone</u>, 520 U.S. 329, 340, n.3 (1997); <u>Blessing</u> expressly identifies Supreme Court Rule 14.1(a)——<u>not</u> the doctrine of procedural default——as the basis on which the Court "decline[s] to address" a claim. That court rule provides in relevant part: "Only the questions set out in the petition [for a writ of

certiorari], or fairly included therein, will be considered by the Court."  Sup. Ct. R. 14.1(a).

As Justice Ginsburg noted in dissent and the full Court has confirmed in other cases, application of Rule 14.1(a) is a prudential decision; it does not constitute a jurisdictional, statutory, or constitutional ruling. See Pasquantino, 544 U.S. at 376 n.5 (Ginsburg, J., dissenting) ("The rule that we do not consider issues not raised in the petition is prudential, not jurisdictional . . . and a remand on the Blakely-Booker question would neither prejudice the Government nor require this Court to delve into complex issues not passed on below." (citation omitted)); Davis, 512 U.S. at 463 (Scalia, J., concurring) ("[T]he refusal to consider arguments not raised is a sound prudential practice, rather than a statutory or constitutional mandate, and there are times when prudence dictates the contrary."); Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp., 510 U.S. 27, 32 (1993) (per curiam) (stating that "Rule 14.1(a), of course, is prudential"); Yee v. City of Escondido, 503 U.S. 519, 535 (1992) ("This rule is prudential in nature, but we disregard it 'only in the most exceptional cases,' where reasons of urgency or of economy suggest the need to address the unpresented question in the case under consideration." (citation omitted)).  In short, the Court unambiguously considers application of Rule 14.1(a) a discretionary decision that it makes to focus the arguments for

the parties and to conserve the Court's resources as it selects cases in which to grant certiorari. Yee, 503 U.S. at 535-36. The Court does not consider application of the Rule a decision about procedural default.

Furthermore, we would not be wise to infer from the fact that the Supreme Court's language mirrors the language of procedural default that the Court has implicitly ruled on the issue of procedural default in Defendants' case. Although the Court's language bears some similarity to the language often used in discussions of procedural default, see, e.g., Massaro v. United States, 538 U.S. 500, 504 (2003) (identifying "the general rule that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice" as the "procedural-default rule" (emphasis added)), the language alone does not a ruling on procedural default make. We have found no decision by the Supreme Court or this or any other Circuit Court mentioning "decline to address" in the same sentence or paragraph as "procedural default." Nor has this Court found cases that discuss both procedural default and Supreme Court Rule 14.1(a). Simply stated, the issues are distinct and have been kept so by the courts. The Court's footnote, then, is properly understood as a discretionary prudential decision, not a ruling on procedural default that represents the law of this case.

-14-

Finally, that the Supreme Court did not choose to remand Defendants' case for resentencing in light of Booker, an option that Justice Ginsburg's footnote suggests the Court may have considered yet rejected, does not mean that the Court determined that Defendants procedurally defaulted their Booker claim. The only definite meaning, based on the Court's language and the precedent the Court cites, is that the Court declined to abandon its "heavy presumption against . . . consideration" of claims not fairly included in the questions presented by a petition for certiorari. Yee, 503 U.S. at 537; see also 16B Charles Alan Wright, et al., Federal Practice and Procedure § 4004.3 (2006) (explaining that there "is no clear unifying theme" binding together the cases in which the Supreme Court has chosen to consider issues not presented by the petition for certiorari).

We note that the district court also did not rule that Defendants procedurally defaulted their Booker claim. The district judge found the opposite:

> Under the unique circumstances of this case, I find that the issue, the sentencing issues were raised on direct appeal when counsel mentioned in their footnote in the Supreme Court the Blakely issue, which was the only issue which had then been, Booker hadn't been decided yet, was the only issue that could have been raised. They did everything they could in the Supreme Court.

J.A. 125.

-15-

2.

Given the absence of any clear ruling by the Supreme Court as to procedural default and our de novo standard, which relieves us from having to give deference to the conclusions drawn below, we may independently assess the merit of the Government's position that Defendants have procedurally defaulted their <u>Booker</u> claim. In the context of federal habeas petitions, we have defined procedural default as the failure to raise on direct appeal errors that could have been raised. <u>See</u> <u>United States v. Harris</u>, 183 F.3d 313, 317 (4th Cir. 1999); <u>Mikalajunas</u>, 186 F.3d at 492. Having reviewed the record (before us now for the third time), we cannot say that Defendants' actions meet this definition with regard to their Sixth Amendment claim.

First, Defendants raised <u>Apprendi</u> at the appropriate juncture: at their original sentencing. Second, they raised <u>Blakely</u> as early as they could during direct review: in their merits brief to the Supreme Court. Third, although they did not request permission from the Supreme Court to file supplemental briefs once <u>Booker</u> was decided (after their oral arguments but before decision), they raised <u>Booker</u> in a petition for rehearing before the Supreme Court issued judgment, meaning they raised <u>Booker</u> before their convictions became final. <u>See</u> <u>Teague v. Lane</u>, 489 U.S. 288, 306 (1989) (indicating that a case is not final until there is a "final judgment not subject to further judicial

-16-

revision" (quotation marks omitted)); <u>United States v. Christopher</u>, 273 F.3d 294, 297 (3d Cir. 2001) (stating that a criminal conviction is not final until resolution of the defendant's appeal); <u>United States v. Logal</u>, 106 F.3d 1547, 1552 (11th Cir. 1997) (same). In short, the habeas petition at issue is not the first time a court has heard Defendants complain about the violations of their Sixth Amendment rights. <u>Cf.</u> <u>Landrum</u>, 93 F.3d at 124 (describing a procedurally defaulted claim as one "raised for the first time in a § 2255 motion").

3.

Our holding that Defendants have not procedurally defaulted their <u>Booker</u> claim in no way undermines, or is undermined by, the Supreme Court's decision not to address Defendants' <u>Booker</u> argument. As the Supreme Court explained in <u>Izumi Kaisha</u>, its "faithful application of Rule 14.1(a)" helps to ensure that the Court does not "engage in ill-considered decisions of questions not presented in the petition" and that it demonstrates strong disapproval of the practice of "smuggling additional questions into a case" after certiorari has been granted. 510 U.S. at 34. The instant case implicates neither concern. Whether the district court applied the Guidelines in a mandatory fashion and enhanced Defendants' sentences based on facts not found by the jury is not an ill-considered question when <u>Booker</u> undisputedly applies to

-17-

Defendants' case.  See Booker, 543 U.S. at 268  (announcing that the Court's holding applies "to all cases on direct review").  Nor were Defendants at risk of "smuggling" additional questions into their case after the Court granted certiorari.  Defendants had no control over the Court's decision to issue Booker while Defendants' direct appeal was pending, thereby making Booker applicable to Defendants' case.

Our holding also leaves intact the doctrine of procedural default.  This Court has emphasized that the doctrine constrains petitioners because "habeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal.'"  Harris, 183 F.3d at 317 (quoting Reed v. Farley, 512 U.S. 339, 354 (1994)).  Our finding that Defendants have not procedurally defaulted their Sixth Amendment claim does not undermine this message, as it is targeted at a category of defendants that does not include Defendants.  Defendants are not "abusing" the writ because they have exhausted their appeals.  Rather, they raised Blakely and Booker as soon as they were able to do so but never received meaningful post-Booker review of their claim.[7]  Unlike those

---

[7]Approximately three hundred other defendants with cases pending on direct review when Booker was decided did receive the benefit of such review:  Twelve days after issuing Booker, the Supreme Court remanded nearly three hundred cases for further consideration in light of the decision.  See Order List, 543 U.S. ___,  Certiorari - Summary Dispositions, Jan. 24, 2005, http://www.supremecourtus.gov/orders/courtorders/012405pzor.pdf. Forty-one of those cases were remanded to this Court.  See id. We thus find ourselves in agreement with the district court: "By any

-18-

defendants with claims we otherwise would bar using the doctrine of procedural default, Defendants present legitimate and important constitutional questions suited, at this juncture, to habeas review. Indeed, the writ is a device poised "to provide a prompt and efficacious remedy for whatever society deems to be intolerable restraints." Nelson, 394 U.S. at 291. The Supreme Court has determined that the pre-Booker sentencing regime represented just such a restraint. See Booker, 543 U.S. at 243 (finding that "the interest in fairness and reliability protected by the right to a jury trial——a common-law right that defendants enjoyed for centuries and that is now enshrined in the Sixth Amendment"——outweighed all other considerations militating against the Court's holding).

B.

Because there has been no procedural default by Defendants, cause and prejudice is not the correct standard of review for their motions. Rather, cognizant that the writ of habeas corpus "now demands . . . application of basic constitutional doctrines of fairness," Lonchar v. Thomas, 517 U.S. 314, 322 (1996), we apply the standard we have applied to all other cases involving

---

sense of fundamental fairness, it just isn't right not to give these defendants the benefit of a Booker analysis." J.A. 127. Cf. Engle v. Isaac, 456 U.S. 107, 126 (1982) ("Today, as in prior centuries, the writ is a bulwark against convictions that violate fundamental fairness.").

<u>Booker</u> questions and pending at the time <u>Booker</u> was decided: plain error. <u>See, e.g.</u>, <u>United States v. Robinson</u>, 460 F.3d 550, 556 (4th Cir. 2006); <u>Hughes</u>, 401 F.3d at 547; <u>United States v. Washington</u>, 398 F.3d 306, 312 n.7 (4th Cir. 2005). Application of the plain error standard is especially appropriate here, where a Sixth Amendment violation has been raised in the courts below and above us, but, with the exception of a mistitled motion to withhold issuance of the mandate, not before us.[8] <u>See</u> Fed. R. Civ. P. 52(b) (stating that a "plain error that affects substantial rights may be considered even though it was not brought to the court's attention"); <u>United States v. Olano</u>, 507 U.S. 725, 732 (1993) (stating that Rule 52(b) leaves the decision to correct an error within the court of appeals' "sound discretion").

1.

In reviewing for plain error, we first determine whether there was an error. <u>Olano</u>, 507 U.S. at 732; <u>Hughes</u>, 401 F.3d at 547. <u>Booker</u> outlawed the mandatory application of the Guidelines

---

[8]In <u>Washington</u>, in fact, we expressly noted that plain error review of the defendant's <u>Booker</u> claim was appropriate notwithstanding the fact that the defendant had not yet challenged his sentence in this Court. <u>See</u> 398 F.3d at 312 n.7 ("Although appellate contentions not raised in an opening brief are normally deemed to have been waived, the <u>Booker</u> principles apply in this proceeding because the Court specifically mandated that we 'must apply [<u>Booker</u>] . . . to all cases on direct review.'" (quoting <u>Booker</u>, 543 U.S. at 268)).

and barred district courts from imposing sentences that exceed the maximum length allowed based on facts found by the jury alone. 543 U.S. at 226-27. In Defendants' case, the district judge applied the Guidelines in a mandatory fashion, acknowledging, but refusing to take into account, Defendants' medical condition. More importantly, however, the base offense levels for Defendants' convictions under the then current and mandatory Guidelines provided for incarceration from zero to six months. Hence, based only on the facts found by the jury beyond a reasonable doubt, Defendants could not have been sentenced to more than six months. In reaching its ultimate sentence of fifty-seven months, the district court enhanced Defendants' sentences beyond the six-month maximum pursuant to facts (namely, the amount of loss to Canada) that it found by a preponderance of the evidence. This constituted error.

2.

We next determine whether the error is plain. Olano, 507 U.S. at 734. "An error is plain 'where the law at the time of trial was settled and clearly contrary to the law at the time of appeal.'" Hughes, 401 F.3d at 547 (quoting Johnson v. United States, 520 U.S. 461, 468 (1997)). At the time of Defendants' sentencing, our precedent foreclosed Sixth Amendment challenges to their sentences. See United States v. Kinter, 235 F.3d 192, 200

(4th Cir. 2000) (holding that "the Sentencing Guidelines pass muster under . . . Apprendi") abrogated by Booker, 543 U.S. 220, as stated in Hughes, 401 F.3d at 547-48. Booker has now settled the question, therefore the district court's error in sentencing Defendants was plain.

3.

Lastly, Defendants must establish that the error affected their substantial rights. See Olano, 507 U.S. at 734; Hughes, 401 F.3d at 548. The Supreme Court has stated that the error "must have been prejudicial;" it "must have affected the outcome of the district court proceedings." Olano, 507 U.S. at 734.

At the hearing on Defendants' § 2255 motions, the district judge stated:

> . . . I think there's been actual prejudice. I think there was an actual and substantial disadvantage. They have to demonstrate reasonable probability, that but for the alleged error, the result of their sentencings would have been different. Again, this is where I don't want to give false hope to the defendants. But I do think there's a reasonable probability that my sentence would have been different.

J.A. 128 (emphasis added). At Defendants' initial sentencing, the district judge indicated that the Guidelines tied his hands:

> I am not unsympathetic . . . to the age and health of the defendants, particularly Carl Pasquantino. But unfortunately, fortunately or unfortunately, these are not matters for me to consider under the guidelines. I don't mean to give short shrift to this, but frankly there simply is no basis under the guidelines for the adjustments or the departures requested.

-22-

J.A. 62 (emphasis added).  Finally, at the resentencing, in discussing Carl Pasquantino's poor health as a factor justifying a non-Guidelines sentence, the district judge stated:

> . . . I'm taking into account . . . Mr. Carl Pasquantino's . . . medical condition, which is, there's no question it's real.  It was real before, <u>I couldn't consider under the guideline. I now can consider it.</u>

J.A. 232 (emphasis added).

These excerpts from the record provide "fair assurance" that the error of applying the Guidelines as mandatory affected the district court's judgment.  <u>Hughes</u>, 401 F.3d at 548 (quoting <u>Kotteakos v. United States</u>, 328 U.S. 750, 764 (1946)).  Because the district court confirmed that its error affected Defendants' sentences, Defendants have shown that the error affected their substantial rights.

In sum, we uphold the district court's decision to conduct the preceding plain error review and, in light of its errors, grant Defendants the only remedy left available to them.  Without the district court's notice of its error and issuance of the writ, Defendants, undisputed members of the class of defendants to which <u>Booker</u> applies, would have yet to be sentenced under a regime in which the Guidelines are treated as advisory.  <u>Cf.</u> <u>Washington</u>, 398 F.3d at 313 (noting the error in the petitioner's sentence because, among other things, "the facts remain that a sentence has yet to be imposed under a regime in which the Guidelines are treated as advisory" (quotation marks and citations omitted)).

-23-

C.

Our disposition of Defendants' petition comports with the principles of retroactivity announced in both <u>Booker</u> and <u>Shea v. Louisiana</u>, 470 U.S. 51 (1985), a similar case decided twenty years earlier.  The <u>Booker</u> Court stated:

> As these dispositions indicate, we must apply today's holdings——both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act——to all cases on direct review.  That fact does not mean that we believe that every sentence gives rise to a Sixth Amendment violation.  Nor do we believe that every appeal will lead to a new sentencing hearing.  That is because we expect reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the "plain-error" test.

543 U.S. at 268 (citations omitted).  Pursuant to <u>Booker</u>, neither the district court nor this Court merely has assumed that Defendants' sentences give rise to a Sixth Amendment violation warranting relief.  Rather, we have applied ordinary prudential doctrines to Defendants' case: The district court determined that Defendants' Sixth Amendment issue was raised below, a determination that we will not disturb.  Likewise, the district court determined that Defendants' case meets the plain error test, a determination we also uphold.[9]  Given the retroactivity principle

---

[9]Further, we again note that the "ordinary prudential doctrine" that the Supreme Court applied to Defendants' Sixth Amendment claim (that is, Supreme Court Rule 14.1(a)) did not bar subsequent review by this Court and the district court.

-24-

announced in Booker, the district court was correct to employ the plain error standard and resentence Defendants.

Our decision today also fully comports with Shea. In Shea, the Supreme Court considered the retroactive effect of Edwards v. Arizona, 451 U.S. 477 (1981), a case that, like Booker, announced a new rule of criminal procedure. See United States v. Morris, 429 F.3d 65, 71 (4th Cir. 2005) (holding that, for purposes of retroactivity analysis, Booker announced a new rule of criminal procedure that was not apparent to all reasonable jurists at the time). The question before the Shea Court was whether Edwards applied retroactively to Shea's convictions when Shea had raised the Edwards issue and Shea's case was pending on direct appeal in the state courts when Edwards was decided. 470 U.S. at 59. Finding that "principled decisionmaking and fairness to similarly situated petitioners require[d] application of a new rule to all cases pending on direct review," the Court held that:

> [I]f a case was pending on direct review at the time Edwards was decided, the appellate court must give retroactive effect to Edwards, subject, of course, to established principles of waiver, harmless error, and the like. If it does not, then a court conducting collateral review of such a conviction should rectify the error and apply Edwards retroactively. This is consistent with Justice Harlan's view that cases on collateral review ordinarily should be considered in light of the law as it stood when the conviction became final.

470 U.S. at 59, 59 n.4 (citing Mackey v. United States, 401 U.S. 667, 689 (1971) (Harlan, J., concurring in judgment)).

Pursuant to <u>Shea</u>, we have given appropriate deference to the principle that Defendants, whose case was pending at the time <u>Booker</u> was decided, should not fare worse than similarly situated defendants by being denied the benefit of the new rule announced in <u>Booker</u>. See <u>id.</u> at 56 (citing Justice Harlan's view that "application of a new rule of law to cases pending on direct review is necessary in order for the Court to avoid being in the position of a super-legislature, selecting one of several cases before it to use to announce the new rule and then letting all other similarly situated persons be passed by unaffected and unprotected by the new rule"). Further, we have on collateral review noted the district court's error and applied <u>Booker</u> retroactively. Finally, we have done so "subject . . . to established principles of waiver, harmless error, and the like" by observing that a court has yet to rule that Defendants procedurally defaulted their claim, by finding that Defendants did not procedurally default their claim, and by applying the plain error test. <u>Id.</u> at 59 n.4.

As a final matter, we note that following <u>Booker</u> the Supreme Court, as it did following <u>Edwards</u>, remanded pending petitions for further proceedings consistent with <u>Booker</u>. In none of the approximately three hundred remand orders, and certainly not in its opinion in Defendants' case or its summary denial of Defendants' petition for rehearing, did the Supreme Court suggest

that Booker applied to the approximately three hundred other defendants whose cases were remanded but not to Defendants. Importantly, the batch of remanded cases included many cases in which the parties had not raised a Sixth Amendment issue in their original briefs. See, e.g., Hawkins v. United States, 543 U.S. 1097 (2005) (granting the petition for rehearing, vacating the previous denial of certiorari, granting certiorari, and remanding for further consideration in light of Booker); Petr's Pet. for Reh'g, Hawkins, No. 05-715, 2006 WL 247285, *4 (Feb. 1, 2006) (noting that the Sixth Amendment ground for appeal had not been previously presented).

In sum, we find Defendants uniquely deserving of the "high prerogative writ." Ex parte Watkins, 28 U.S. 193, 202 (1830). The Government does not dispute that the district court erred in its application of the Guidelines. Thus, in absence of any ruling by the Supreme Court or this Court that Defendants procedurally defaulted their Booker claim, the district court was correct to note its error and grant Defendants habeas relief. The Great Writ fully allows the courts to do justice in this circumstance:

> The scope and flexibility of the writ——its capacity to reach all manner of illegal detention——its ability to cut through barriers of form and procedural mazes——have always been emphasized and jealously guarded by courts and lawmakers. The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected.

Nelson, 394 U.S. at 291.

-27-

IV.

Having affirmed the district court's decision to issue the writ in order to resentence Defendants in light of <u>Booker</u>, we turn to the reasonableness of the new sentences imposed. The Government argues that even if Defendants were entitled to habeas relief, the new sentences of eighteen months for David Pasquantino and twelve months and one day for Carl Pasquantino are unreasonable, for they are sixty-eight and seventy-nine percent reductions from the previous sentences, respectively, and more than two-thirds from the bottom of the applicable Guidelines range.

A.

This Court reviews sentences for reasonableness, considering the extent to which they comport with the goals of 18 U.S.C. § 3553(a). <u>United States v. Davenport</u>, 445 F.3d 366, 370 (4th Cir. 2006); <u>see</u> § 3553(a) (instructing courts to impose sentences "sufficient but not greater than necessary, to comply with" several enumerated purposes). In determining whether a sentence outside the Guidelines range (a "variance sentence") serves the goals of § 3553(a), this Court defers to the sentencing court's judgment and corrects only for abuse of discretion. <u>United States v. Green</u>, 436 F.3d 449, 457 (4th Cir. 2006).

In reviewing a variance sentence, this Court "must consider——in light of the factors enumerated in § 3553(a) and any relevant Guidelines provisions——whether the district court acted reasonably with respect to (1) the imposition of a variance sentence, and (2) the extent of the variance." United States v. Moreland, 437 F.3d 424, 433-34 (4th Cir. 2006). "Generally, if the reasons justifying the variance are tied to § 3553(a) and are plausible, the sentence will be deemed reasonable." Id. at 434.

B.

Consistent with Hughes, in resentencing the district court consulted the Guidelines, considered the factors set forth in § 3553(a) and, after imposing sentences outside the Guidelines range, explained its reasons for doing so. See Hughes, 410 F.3d at 546. As for the § 3553(a) factors, the court determined that: (1) the nature and circumstances of the offense required some incarceration, and the history and characteristics of Defendants justified a Guidelines sentence; (2) the nature of the fraud victim was different because the victim was not "helpless," but a "sovereign government that has the power to protect itself," J.A. 229-30; (3) incarceration reflected the seriousness of the offense and promoted respect for the law; (4) just punishment of the offense required the court to take into account the fact that the case has been pending for a long period of time, not because

-29-

Defendants sought to avoid a sentence, but because legitimate issues were being litigated; (5) the case "has been a sword of Damocles hanging over the head of [Defendants]," J.A. 230; (6) the new sentences were sufficient to deter others; (7) specific deterrence was not an issue because Defendants would not commit more crimes, therefore the public need not be protected from them; and (8) the issue of correctional treatment for Defendants was irrelevant.

After discussing these factors, the district court stated:

> Let me say further. The factors I'm taking into account in Mr. Carl Pasquantino's case are twofold, are his medical condition . . . . It was real before, I couldn't consider under the guideline. I can now can consider it. And if anything, it has deteriorated since. . . . [P]articularly in Mr. Carl Pasquantino's case, I recognize the hardship that's imposed upon him and his daughter, that I do think, I absolutely agree with you, that periods of incarceration are necessary to reflect the seriousness of the offense. I hope that the sentences I impose will lead to a final resolution of this matter and that perhaps by giving less, I'm giving more.

J.A. 232-34. The court then sentenced David Pasquantino to eighteen months in prison and Carl Pasquantino to twelve months and one day in prison. The Government argues that the sentences are unreasonable for three reasons discussed below.

1.

First, the Government maintains that the sentences are substantively unreasonable because the district court relied on

various improper factors in sentencing, in contravention of Moreland. See 437 F.3d at 434 (holding that a "sentence may be substantively unreasonable if the court relies on an improper factor or rejects policies articulated by Congress or the Sentencing Commission"). The Government largely assigns error to the district court's consideration of the length of time between sentencing and resentencing—a time span enlarged, the court noted, because the very ability to prosecute Defendants' conduct was an unsettled question. The court's observation, however, is tied to § 3553(a)(1), which requires attention to the nature of the offense. Here, Defendants did not mount a frivolous challenge to their convictions merely to prolong their freedom. Rather, the criminality of the offense itself was a fiercely contested legal question that necessarily lengthened the proceedings. The resolution of this question impacts the nature of offense, which is an appropriate factor for consideration under § 3553(a).

Moreover, the district court's consideration of the length of time this case has been pending due to the underlying legal contest has not created a sentence disparity between Defendants and other similarly situated defendants, as the Government argues. Defendants' case has presented a matter of first impression for the courts. The district court also did not err, as the Government contends, in observing that the victim in this case was a sovereign body (Canada) and thus less vulnerable than the

typical victim of wire fraud. The court's attention to the nature of the victim is tied to § 3553(a)(1), which allows consideration of the nature of the offense.

## 2.

Second, the Government contends that there was substantive error in the district court's reliance on the medical condition of Carl Pasquantino. The Government is particularly troubled that, (1) by its estimation, the record contains insufficient information about Carl's medical condition to warrant a variance sentence, and (2) Carl's medical condition was not a basis for departure under the Guidelines and therefore could not have accounted for the six-month difference between Carl's sentence and David's sentence.

The Government's first complaint lacks merit. The district court had before it the Presentence Report detailing Carl's several strokes, cerebrovascular disease, severe organic mental disorder, and complete disability for work purposes; and a neurologist's affidavit reporting that Carl had suffered a transient ischemic attack in 2004, his condition had grown worse since trial, he was at risk for a life-threatening stroke, and incarceration would "constitute a grave danger to his life." J.A. 163-65. In addition, the court had before it a 1996 Social Security Administration decision finding that Carl has had a

-32-

severe mental impairment precluding the "performance of substantial gainful activity" since 1994, and that he is "'disabled' within the meaning of the Social Security Act." J.A. 166-67. This information is sufficient to warrant a substantial variance sentence for Carl. Cf. United States v. Greenwood, 928 F.2d 645, 646 (4th Cir. 1991) (holding that probation rather than imprisonment was proper where incarceration would jeopardize defendant's treatment for a severe medical impairment).

The Government's second complaint is also unavailing. Physical condition is not a prohibited grounds for departure under the Guidelines; a court may downward depart based on physical condition when a defendant has an extraordinary physical impairment. See U.S. Sentencing Guidelines Manual § 5H1.4 (2005). Even if physical condition were disfavored as a grounds for departure, this Court has declined to decide whether "a variance could be based on the existence of a factor discouraged as a basis for departure under the guidelines." United States v. Hampton, 441 F.3d 284, 289 (4th Cir. 2006). Accordingly, the district court was entitled to consider factors for Carl's variance sentence that it ordinarily would not consider under the Guidelines. Cf. id. at 288 (noting that the factors justifying a variance are less limited than those justifying a departure).

Third, the Government argues that there was procedural error in the district court's imposition of the new sentences. The Government contends, for example, that the court failed to explain "how the variance sentences better serve the [§ 3553(a)] factors than do the guidelines sentences previously imposed." Appellant's Br. 26. This is not, however, the proper inquiry. We merely ask whether the district court has "explain[ed] why a sentence outside of the Sentencing Guideline range better serves <u>the relevant sentencing purposes set forth in § 3553(a)</u>." <u>Green</u>, 436 F.3d at 456 (emphasis added). We do not obligate the district court to compare original sentences to new sentences expressly. The district court could not engage in such comparison in any event.[10] Because the original sentences were imposed in violation of the Sixth Amendment, they are unconstitutional and cannot form the basis for comparison.

The Government argues that the new sentences are also procedurally unreasonable because the district court offered an inadequate statement of reasons for the sentences. <u>See</u> <u>Moreland</u>, 437 F.3d at 434. In addition, the Government notes, "the farther the court diverges from the advisory guideline range, the more

---

[10]The district court did, however, suggest that the substantially lower sentences better served the purposes of § 3553(a) than the 57-month Guidelines sentences because the lower sentences would assist in bringing the litigation to an end.

compelling the reasons for the divergence must be." <u>Id.</u>  The district court, however, provided sufficiently compelling reasons for the variance sentences it imposed, all of which are plausibly connected to § 3553(a).  <u>Cf.</u> <u>id.</u> (holding that a variance sentence is reasonable if it has justifications that are plausible and tied to § 3553(a)).  We do not and cannot say that the district court abused its discretion in resentencing Defendants.

V.

Given the plain <u>Booker</u> errors infecting Defendants' original sentencing and the express application of <u>Booker</u> to Defendants' sentences, coupled with the unique procedural posture in which Defendants now find their case, we uphold the district court's decision to grant collateral review and correct the errors by imposing new sentences——sentences we do not find unreasonable. The judgment of the district court is affirmed.

<u>AFFIRMED</u>