**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert WASHINGTON, Defendant–
Appellant.**

No. 02–4653.

United States Court of Appeals,
Fourth Circuit.

Argued: Nov. 30, 2004.

Decided: Feb. 11, 2005.

**ARGUED:** Paul Samuel Rosenzweig, Washington, D.C., for Appellant. Michael Joseph Leotta, Assistant United States Attorney, Office of the United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** Thomas M. DiBiagio, United States Attorney, Baltimore, Maryland, for Appellee.

Before NIEMEYER, LUTTIG, and KING, Circuit Judges.

Affirmed in part, and remanded by ·published opinion. Judge KING wrote the opinion, in which Judge NIEMEYER and Judge LUTTIG joined.

## OPINION

KING, Circuit Judge:

Robert Washington appeals his conviction and sentence in the District of Maryland for possession of a firearm by a convicted felon, in contravention of 18 U.S.C. § 922(g)(1). On appeal, Washington makes three contentions: (1) that the district court's failure to compel the Government to grant immunity to a potentially exculpatory defense witness denied him his constitutional right to a fair trial; (2) that the evidence was insufficient to support his conviction; and (3) that the court erroneously enhanced his sentence by two levels for subornation of his wife's perjured trial testimony. As explained below, we reject Washington's first two contentions. In light of the Supreme Court's recent decision in *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), however, we vacate Washington's sentence and remand.

## I.

On January 23, 2002, Washington was indicted by the federal grand jury in Maryland for possession of a firearm by a convicted felon. *See* 18 U.S.C. § 922(g)(1). At trial in April 2002, Officer Todd Tugya of the Baltimore City Police Department testified that, on the evening of November 11, 2001, he responded to an assault at 620 North Robinson Street. There he met Joseph Gilmore, who had a cut under his eye and a swollen lip. Gilmore led Officer Tugya to a nearby residence at 3037 East Monument Street to point out the person who had hit him in the face. When Officer Tugya knocked on the door and identified himself as a police officer, a thickly built black male, wearing sweatpants, a knit cap that covered braids, and no shoes or shirt, opened the door while holding his left hand behind his back. After repeated requests from Officer Tugya for the person to step outside and "let me see your hands," the man dropped a black handgun to the floor from behind, which landed between his legs. He then ran from the house without being apprehended. Officer Tugya promptly recovered the firearm, a loaded 9 millimeter Ruger P89 semi-automatic pistol.

Two hours later, Officer Tugya identified Washington in a photo line-up as the man who had dropped the Ruger pistol and absconded from the house on East Monument Street, an identification he confirmed at trial. Detective Alexander Lee testified that, later on November 11, 2001, he obtained written permission from Washington's wife to search the residence at 3037 East Monument Street, and that he had seized a box from a second floor bedroom. The box had Washington's name on it, and it contained two loaded ammunition magazines that fit the Ruger pistol.

The parties stipulated at trial that Washington had been previously convicted of a felony, that his right to own or possess a firearm had not been restored, and that the firearm in question had travelled in interstate commerce. In his defense, Washington called only one witness, his wife Joyce, who denied that Washington was home on the evening of November 11, 2001. She testified that the individual who opened the front door for Officer Tugya was James Hill, with whom she was having an affair. On cross-examination, Mrs. Washington acknowledged that, although she had spoken to the police about her husband's arrest at least four times, she had never claimed that her husband was not at home that evening or that Hill was the man they sought.

Washington also sought to introduce into evidence the testimony of Gilmore (the assault victim) or, in the alternative, Gilmore's affidavit. Gilmore had executed an affidavit for Washington recanting his earlier written and tape-recorded statements to the police that identified Washington as the person who had assaulted him on November 11, 2001, and who possessed the firearm that evening. Gilmore's affidavit maintained that his prior statements were false and had been coerced by police officers who, among other improprieties, had denied him medical treatment for his injuries. Prior to Washington's trial, the Government advised the district court that Gilmore's testimony could subject him to obstruction of justice and perjury charges. The court then appointed counsel for Gilmore, who thereafter indicated that, if called to testify, Gilmore would invoke his Fifth Amendment privilege against self-incrimination.

Washington then requested the court to compel the Government to grant Gilmore immunity from prosecution, which the Government declined to do, in order to permit him to testify on Washington's be-

half. The court denied Washington's motion, finding that the prosecution was not using its authority abusively in pointing out that Gilmore's testimony could result in an obstruction of justice or perjury charge. Indeed, according to the trial judge, "any responsible prosecutor" would have brought the witness's potential criminal exposure to the court's attention. On April 17, 2002, after a three-day trial, the jury convicted Washington of the § 922(g)(1) offense.

On August 5, 2003, the district court conducted Washington's sentencing hearing. In determining Washington's sentencing range, the court enhanced his offense level by two levels for obstruction of justice under § 3C1.1 of the Sentencing Guidelines, finding that Washington had suborned perjury when he called his wife to the stand. *See U.S. Sentencing Guidelines Manual* § 3C1.1.[1] In making its § 3C1.1 ruling, the court found that Joyce

Washington's trial testimony was "clearly false" and "incredible," that her evidence went to a core issue in the trial, and that Washington knew the testimony to be false. The court concluded that Washington "proffered testimony from his wife, or he sat there while his wife testified to something which was simply factually not true." Finally, the court sentenced Washington to 120 months, the statutory maximum, to be followed by three years of supervised release.[2]

Washington has filed a timely notice of appeal, and he raises on appeal the contentions of error spelled out above.[3] We possess jurisdiction pursuant to 28 U.S.C. § 1291, and we assess Washington's contentions in turn.

## II.

### A.

 First, Washington contends that, under his Sixth Amendment right to call

---

1. Washington's Presentence Report did not recommend the § 3C1.1 enhancement. In letters submitted to the district court prior to the sentencing hearing, the Government urged the court to apply the § 3C1.1 enhancement on four grounds: (1) Washington made a false statement to Officer Tugya when he opened the door to 3037 East Monument Street; (2) he did not obey Officer Tugya's order to step away from the pistol; (3) he fled the scene; and (4) he offered the false testimony of his wife and attempted to offer the false testimony of Gilmore. The court applied the § 3C1.1 enhancement only because Washington suborned perjury in calling his wife to give false testimony at trial.

2. Washington's Presentence Report recommended a total offense level of 24 and a criminal history category of V, and the applicable Guideline range of imprisonment was therefore 92 to 115 months. The trial judge stated at the sentencing hearing that "I would have gone to the top of that range" (or 115 months). The § 3C1.1 enhancement increased Washington's offense level to 26 under the Guidelines, permitting the court to sentence Washington to 110 to 137 months.

Sections 922(g)(1) and 924(a)(2) of Title 18 contain a statutory cap of ten years (120 months). Accordingly, as the district court observed, "what we're talking about [in applying the § 3C1.1 enhancement] is five months," *i.e.*, a sentence of 120 months instead of 115 months.

3. Four days after the Supreme Court's June 2004 decision in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403, Washington directed this Court's attention to its potential implications for his appeal. Letter from Washington's counsel, Mr. Rosenzweig, to this Court (June 28, 2004) (*Blakely* "bears directly on Mr. Washington's challenge to the obstruction of justice sentencing enhancement and supports his alternative submission that his sentence should be vacated and the case remanded for resentencing."). On January 12, 2005, the Court held in *Booker* that *Blakely* applies to the federal Sentencing Guidelines. That same day, Washington supplemented his brief in this proceeding with the *Booker* decision. Letter from Washington's counsel to this Court (January 12, 2005).

witnesses, the district court should have directed the Government to grant Gilmore immunity from prosecution, in order for his exculpatory evidence to be presented at trial.[4] He maintains that the Government's assertion that Gilmore could be charged with perjury or obstruction of justice forced him to assert his Fifth Amendment privilege, constituting prosecutorial overreaching. Such a contention presents a mixed question of law and fact, and we review a district court's factual findings for clear error and its legal determinations de novo. *See United States v. Ellis*, 121 F.3d 908, 927 (4th Cir.1997) (observing that review of district court's determination of prosecutorial misconduct is mixed question of law and fact); *see also United States v. Ramos–Oseguera*, 120 F.3d 1028, 1037 (9th Cir.1997) (reviewing district court's findings on decision not to compel Government to grant immunity for clear error), *overruled on other grounds by United States v. Nordby*, 225 F.3d 1053, 1059 (9th Cir. 2000). As explained below, Washington's contention is without merit and must be rejected.

We have consistently held that a district court is without authority to confer immunity on a witness *sua sponte*. *See United States v. Klauber*, 611 F.2d 512, 517 (4th Cir.1979) ("there was no power in the district judge to confer immunity"). Indeed, as we recently observed in *United States v. Moussaoui*, 382 F.3d 453, 466 (4th Cir.2004), "no power to grant immunity is found in the Constitution." Under the applicable principles, only the prosecution is entitled to seek witness immunity in a federal criminal case. *See, e.g.,* 18 U.S.C. § 6003(b) ("A United States attorney may, with approval of the Attorney General ... request an order [of immunity from the district court]."); *United States*

*v. Karas*, 624 F.2d 500, 505 (4th Cir.1980) ("The decision to grant immunity is within the sole discretion of the prosecution."). While a district court may, in very limited circumstances, compel a United States Attorney to grant such immunity, a " 'defendant bears a heavy burden when seeking to have the district court compel the grant of immunity.' " *United States v. Mitchell*, 886 F.2d 667, 669 (4th Cir.1989) (quoting *United States v. Gravely*, 840 F.2d 1156, 1160 (4th Cir.1988)). We have held that a district court is without authority to issue such an order unless a defendant has made (1) "a decisive showing of prosecutorial misconduct or overreaching and (2) the proffered evidence would be material, exculpatory and unavailable from all other sources." *United States v. Abbas*, 74 F.3d 506, 512 (4th Cir.1996).

The district court denied Washington's request for immunity to Gilmore, finding that Washington had failed to show any prosecutorial misconduct or overreaching. First of all, the court recognized that the prosecutor's statement that Gilmore possibly faced prosecution for perjury or obstruction of justice by repudiating his earlier statements was, in these circumstances, the act of a prudent prosecutor. *See Mitchell*, 886 F.2d at 670 (observing that witness is not entitled to immunity when witness is subject of criminal investigation). Furthermore, Washington proffered no evidence that Gilmore had been coerced into asserting his Fifth Amendment privilege by threats of prosecution. *See, e.g., United States v. Morrison*, 535 F.2d 223, 227 (3d Cir.1976) (observing that Government improperly coerced witness to plead Fifth Amendment through threats of prosecution and "highly intimi-

---

4. Pursuant to the Sixth Amendment, an accused possesses, *inter alia*, the right to "com-

pulsory process for obtaining witnesses in his favor." U.S. Const. amend. VI.

dating personal interview").[5] On these facts, the district court lacked the authority to compel the Government to grant Gilmore immunity, and it properly declined to do so.

### B.

■ Washington next maintains that the trial evidence was insufficient to prove his guilt on the § 922(g)(1) offense. When considering this contention, we are obliged to "sustain the jury's verdict 'if there is substantial evidence, taking the view most favorable to the Government, to support it.'" *United States v. Stockton,* 349 F.3d 755, 760–61 (4th Cir.2003) (quoting *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942)). In determining whether the evidence is "substantial," we "inquire whether there is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.*

■ The evidence in Washington's trial, viewed in the light most favorable to the Government, is more than sufficient to support the guilty verdict. Washington stipulated that he had been convicted of a felony, that he had not had his right to own or possess a firearm restored, and that the firearm in question had travelled in interstate commerce. The only issue reserved for resolution by the jury was whether Washington had knowingly possessed the Ruger pistol. *See United States v. Langley,* 62 F.3d 602, 606 (4th Cir.1995) (en banc) (explaining that a violation of § 922(g)(1) requires Government to

prove: "(1) the defendant previously had been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) the defendant knowingly possessed ... the firearm; and (3) ... the firearm had travelled in interstate or foreign commerce"). Officer Tugya's trial identification of Washington as the individual who was holding the Ruger pistol in the doorway of 3037 East Monument Street, plus the box found and seized from the second-floor bedroom—with Washington's name on it and containing two loaded magazines that fit the pistol—was sufficient proof (if credited by the jury) that Washington had knowingly possessed the firearm. *See United States v. Sun,* 278 F.3d 302, 313 (4th Cir.2002) ("[W]e do not review the credibility of the witnesses and assume the jury resolved all contradictions in the testimony in favor of the government."). Accordingly, Washington's challenge to the sufficiency of the trial evidence must be rejected.

### C.

■ Washington's final contention is that the district court erroneously enhanced his sentence, pursuant to § 3C1.1 of the Guidelines, for subornation of his wife's perjured trial testimony. We assess Washington's challenge to this enhancement in light of the Supreme Court's recent decision in *United States v. Booker,* —— U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). *Id.* (holding Sixth Amendment contravened when sentencing court, acting pursuant to Guidelines, imposes sentence greater than the maximum authorized by

---

**5.** Washington alleges that the actions of the authorities in coercing Gilmore into incriminating Washington, combined with the prosecutor raising the specter of an obstruction of justice or perjury charge, required the district court to compel the prosecution to grant immunity. However, Washington has not

shown how police misconduct, if any existed, could be attributed to the prosecutors. *See Jean v. Collins,* 221 F.3d 656, 662–663(4th Cir.2000) (en banc) (Wilkinson, C.J., concurring) (declining to impute misconduct of police officers to prosecutors).

facts found by jury alone).[6] Because Washington asserted this challenge to his sentence for the first time on appeal, we review his claim for plain error only. *See* Breyer Opinion at 25 ("reviewing courts to apply ordinary prudential doctrines, determining, for example, whether the issue was raised below and whether it fails the 'plain-error' test"); *United States v. Hughes*, 396 F.3d 374, 379 (4th Cir.2005).[7] The plain error mandate of *United States v. Olano*, 507 U.S. 725, 732, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), is satisfied if: (1) there was error; (2) it was plain; and (3) it affected the defendant's substantial rights. If these three conditions are met, we may then exercise our discretion to notice the error, but only if it "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings." *Id.* (citation and internal quotation marks omitted).

The *Olano* conditions are readily satisfied here. First, under *Booker*, the district court's imposition of the 120–month sentence on Washington was error. The § 3C1.1 enhancement resulted in a sentence exceeding the maximum, *i.e.*, 115 months, authorized by the jury verdict pursuant to the then-mandatory Guidelines regime. And the facts underlying the enhancement were not proved to the jury beyond a reasonable doubt, but were found by the sentencing judge by a preponderance of the evidence. *See* Stevens Opinion at 20 ("Any fact ... which is necessary to support a sentence exceeding the maximum authorized by the facts established

by ... a jury verdict must be ... proved to a jury beyond a reasonable doubt."); *Hughes*, at 377.

Next, pursuant to *Booker*, the error resulting from the sentence imposed by the district court is plain "at the time of appellate consideration." *United States v. Maxwell*, 285 F.3d 336, 342 (4th Cir.2002) ("[n]otably, the error need not be plain at the time the district court erred"); *see Hughes*, at 379. And this error affected Washington's substantial rights. Because Washington challenges his sentence on the ground that it was greater than the maximum authorized by the facts found by the jury alone (as in *Hughes*), and the trial judge specifically added five months to his sentence on the basis of facts "not proved to the jury," the error was, in these circumstances, prejudicial. *Hughes*, at 379; *accord United States v. Promise*, 255 F.3d 150, 160 (4th Cir.2001) (en banc) (holding that *Apprendi* error resulting in increased sentence affects defendant's substantial rights).

Finally, we exercise our discretion to notice the error with respect to Washington's sentence because it "seriously affect[s] the fairness, integrity or public reputation of [the] judicial proceedings." *See Olano*, 507 U.S. at 732, 113 S.Ct. 1770 (citation and internal quotation marks omitted). The constitutional error committed by the district court, sentencing Washington based on facts not found by the jury, added at least five months to Washington's term of imprisonment. And,

---

**6.** In *Booker*, there are two separate opinions for the Court, the first authored by Justice Stevens and the second by Justice Breyer (hereinafter the "Stevens Opinion" and the "Breyer Opinion").

**7.** Although appellate contentions not raised in an opening brief are normally deemed to have

been waived, *see Edwards v. City of Goldsboro*, 178 F.3d 231, 241 n. 6 (4th Cir.1999), the *Booker* principles apply in this proceeding because the Court specifically mandated that we "must apply [*Booker*] ... to all cases on direct review." Breyer Opinion at 25.

importantly, as Judge Wilkins observed in *Hughes*, "the fact remains that a sentence has yet to be imposed under a regime in which the Guidelines are treated as advisory," and, "[w]e simply do not know how the district court would have sentenced [Washington] had it been operating under the regime established by *Booker*." *Hughes*, at 379 n. 8. We therefore exercise our discretion to notice this error, vacate Washington's sentence, and remand for resentencing.[8]

### III.

Pursuant to the foregoing, we affirm Washington's conviction, vacate his sentence, and remand for resentencing.

*AFFIRMED IN PART, VACATED IN PART, AND REMANDED*

---

**8.** Washington's sentencing contention presented an unresolved question in this Circuit: whether the calling of a witness whom the defendant knows will testify falsely could constitute obstruction of justice under § 3C1.1 of the Guidelines. Washington contends that it could not, and also that the sentencing court failed to make sufficient findings that any such perjury was suborned. We observe simply that Washington's basic contention is not well-taken, but that the factual predicate underlying his proposition presents, in this case, a close question. In determining what constitutes "subornation of perjury" for purposes of the Guidelines, we look to the "definition that

has gained general acceptance and common understanding" under the subornation of perjury statute, *i.e.,* 18 U.S.C. § 1622. *See United States v. Dunnigan*, 507 U.S. 87, 94, 113 S.Ct. 1111, 122 L.Ed.2d 445 (1993) (applying definition of perjury under § 1621 to § 3C1.1 enhancement for perjury). And a person suborns perjury by procuring another to commit perjury. *See* § 1621 (defining perjury); *Petite v. United States*, 262 F.2d 788, 794 (4th Cir. 1959), *vacated on other grounds*, 361 U.S. 529, 80 S.Ct. 450, 4 L.Ed.2d 490 (1960) (establishing three elements of crime of subornation of perjury).